**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| | ) | |
| | ) | **No. 1:26-CR-00229-SEG-JSA** |
| **Stephen R. Murphy,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION TO SUPPRESS**
**EVIDENCE DERIVED FROM BORDER SEARCH**

Defendant Stephen Murphy moves to suppress evidence derived from searches of his electronic devices pursuant to a warrantless border search on or about April 29, 2026. While he recognizes the broad authority given to law enforcement officers when safeguarding our nation's borders, *see United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018), he has reason to believe that law enforcement officers have abused that authority beyond what is justified to protect the Republic. Accordingly, he requests an evidentiary hearing to establish facts that support his argument that this case falls outside the spirit of *Touset*.

**BACKGROUND**

Mr. Murphy is a citizen of the Republic of Ireland but holds Lawful Permanent Resident status in the United States. Until his arrest in this case, he was an employee of Delta Airlines with managerial authority. He has lived in Atlanta since 2017.

On April 29, 2026, Mr. Murphy was returning from a work trip to Santiago, Chile. He was stopped while going through customs inspection and diverted to Customs and Border Protection ("CBP") Baggage Secondary. At a bond hearing on May 5, 2026, it was revealed that a TECS[1] alert had been placed in a law enforcement database based on the belief that he may have purchased Child Sexual Abuse Material ("CSAM"). The Government has not produced any discovery that makes clear how Mr. Murphy was identified, when the TECS alert was generated, or what basis existed to prompt authorities to place an alert on his profile. The result, however, was that he was flagged upon trying to reenter the country.

Using their broad search authority, CBP officials seized his electronic devices during secondary inspection and asked him to make a binding declaration that the devices belonged to him. CBP Officer Gisel Valentin asked Mr. Murphy to provide the passcode to his iPhone, and he showed hesitation. After pressure, he finally relented. Officer Valentin conducted a manual review of Mr. Murphy's personal iPhone and discovered what appeared to be CSAM within a deleted

[1] TECS is not an acronym but is the "principal system used by officers at the border to assist with screening and determinations regarding admissibility of arriving persons." *See* U.S. Dep't of Homeland Security, "TECS System: CBP Primary and Secondary Processing (TECS) National SAR Initiative," at 2 (Aug. 5, 2011), *available at* *https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp-tecs-sar-update_0.pdf*.

folder. She alerted Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Travis McGhie, who arrived to conduct further inspection of the devices. He searched "hidden" folders on Mr. Murphy's iPhone that contained what Officer McGhie determined was CSAM. Officer McGhie attempted an interview, but Mr. Murphy invoked his right to an attorney after being informed of his *Miranda* rights. Officer McGhie then arrested Mr. Murphy for knowingly transporting CSAM into the United States.

Mr. Murphy's personal iPhone and personal computer, both seized at the border, have been imaged and searched by HSI analysts and law enforcement.[2] On information and belief, no warrant was ever obtained for these searches, with law enforcement instead relying on their broad authority under the border search exception to the warrant requirement.

## ARGUMENT

### 1. Mr. Murphy Did Not Voluntarily Provide the Passcode for His Phone.

Mr. Murphy challenges the initial manual search of his cell phone and the fruits of that search because he did not voluntarily provide the password that allowed CBP Officer Valentin and TFO Officer McGhie to conduct that search.

[2] Although the Government has had possession of these devices since Mr. Murphy's arrest on April 29, 2026, a forensic report has yet to be provided to Mr. Murphy. Thus, additional motions may be forthcoming.

While being stopped at the border and pulled into CBP secondary inspection for a seizure and interview is not the same as a formal arrest, it is still a mandatory detention. This was not a police encounter in public; Mr. Murphy was pulled into an interrogation room after being diverted from the general customs entry point. The question for the Court therefore will not be whether the formalities of arrest existed but whether a reasonable person, under the totality of the circumstances facing Mr. Murphy, would have felt that their freedom of movement was constrained and that they were not free to leave. *See United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006); *see also J.D.B. v. North Carolina*, 564 U.S. 261 (2011). Should this Court agree that Mr. Murphy was in custody, he should not have been compelled to provide the password to his phone, which was an act of self-incrimination. *Miranda v. Arizona*, 384 U.S. (1966); *see also In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, 670 F.3d 1335 (11th Cir. 2012). Furthermore, even if this Court finds that Mr. Murphy was not in custody, the government must establish that his statements were made knowingly and voluntarily and were not the result of an involuntary admission. *See Jackson v. Denno*, 378 U.S. 368 (1969).

2. **The Intrusive Search of Mr. Murphy's Phone Constituted an Abuse of the Border Search Exception to the Warrant Requirement.**

Mr. Murphy challenges both the manual search of his cell phone at CBP secondary inspection and the warrantless forensic extractions of all his devices

later.[3] He acknowledges that law enforcement officers have broad authority to search persons and items entering the United States at the border given the unique concerns of safeguarding the homefront. *United States v. Flores-Montano,* 541 U.S. 150, 152 (2004); *United States v. Garcia*, 672 F.2d 1349, 1353-54 (11th Cir. 1982). "The border-search exception is grounded in the recognized right of the sovereign to control, subject to substantive limitations imposed by the Constitution, who and what may enter the country." *Garcia*, 672 F.2d at 1354. (quotation marks and citation omitted). Generally, the government needs neither a warrant supported by probable cause nor even reasonable suspicion to conduct such a search at the border. *See id.*

The Eleventh Circuit has effectively unshackled the government from any regard for the Fourth Amendment at the border. In *Touset*, the panel was adamant that neither the Supreme Court nor the court's own decisions have ever required reasonable suspicion for border searches regardless of how non-routine or invasive those searches are. *Touset*, 890 F.3d at 1233-34. Ignoring the Supreme Court's concerns about the heightened privacy interest in the contents of cell phone discussed in *Riley v. California*, 573 U.S. 373 (2014), the panel did not view cell phone searches as "highly intrusive" and found no distinction between cell

[3] Mr. Murphy assumes that the forensic extractions were warrantless because he has not been provided with copies of any warrants.

phones and any other type of property that require "special treatment" or that would change this rule. *See id.* Because cell phones are often used to conceal contraband such as CSAM, the court declined to "invent heightened constitutional protection for travelers who cross our borders with this contraband in tow." *Id.* at 1236.

But a close analysis of *Touset* also reveals the compelling government interests underlying broad border search authority the court was seeking to defend—the effort to keep illegal items ***<u>out</u>*** of this country. Allowing broader leeway at the border makes particular sense "when the government searches the luggage or pockets of a person crossing the border carrying objects that can only be introduced to this country by being physically moved across its borders." *United States v. Sultanov*, 742 F. Supp. 3d 258, 285 (E.D.N.Y. 2024). But where the contraband is contained on a cell phone, searching and seizing the phone does not prevent that data from entering and circulating within the country because the data almost certainly *does not exist* on the phone itself but on external computer servers or even on the "cloud." *See id.* Other courts have concluded that unlimited power to search cell phones at the border cannot be squared with *Riley*. *See, e.g., id.* at 284-85; *see also United States v. Smith*, 673 F.Supp.3d 381, 397-98 (S.D.N.Y. May 11, 2023) (criticizing *Touset* as having improperly "brushed aside the Supreme Court's reasoning in *Riley*").

The government's authority at the border should not be without limit. *See United States v. Vergara*, 884 F.3d 1209, 1315 (11th Cir. 2018) (J. Pryor, J., dissenting) (arguing that the "government's authority at the border is not without limits," especially where the searches are nonroutine). As with everything else in Fourth Amendment jurisprudence, border searches should still be held to some test that balances the competing interests of the individual and the sovereign to determine whether the scope and duration of the search and seizure exceeded the outer limits of reasonableness. *See United States v. Cotterman*, 709 F.3d 952, 960 (9th Cir. 2013) (en banc). Even in this search-friendly Circuit, that the government's power to search at the border tolerates abuse from law enforcement officers who abuse that power to evade the warrant requirement—which is exactly what CBP did here.

Some courts are pushing back on giving law enforcement unfettered access to digital devices at the border given the heightened privacy interests in such devices. In *Sultanov,* the court considered the circumstances of a recently-naturalized citizen who had traveled to his home country of Uzbekistan. *See Sultanov*, 742 F. Supp. 3d at 267. While the defendant was in Uzbekistan, an alert was placed in TECS that he had possibly purchased CSAM. *Id.* When he attempted to reenter the United States two months later, he was stopped at secondary inspection and the CBP officer conducted a manual search of his phone, indeed

discovering what the officer believed to be CSAM. They later obtained a warrant to conduct a forensic examination of his phone. *See id.* at 288-90.

The court concluded that probable cause and a warrant are required to search a phone at the border. *Id.* at 291. For Fourth Amendment purposes, there is no meaningful distinction between a manual and forensic search of a phone. *Id.* at 288-91. Rejecting even reasonable suspicion as a workable standard, the court held that allowing government officials "to conduct essentially boundless examinations of devices containing a traveler's most private records, communications, and personal histories would broaden its application far beyond its intended or appropriate scope. For even though the government has characterized non-forensic cell phone examinations as 'manual searches,' in practical terms, there is simply no equivalent of a street officer's 'pat-down frisk' of a suspect's person when it comes to the contents of a traveler's cell phone." *Id.* at 292-93.

Recognizing that *Touset* remains binding authority in this Circuit, that panel did not address the issue presented here: when law enforcement have reasonable suspicion of a purely domestic crime, whether they may forego traditional investigative means of combatting the proliferation of CSAM and other contraband by lying in wait for a border crossing. The border search exception is an officer's best friend if his target is likely to travel abroad often—say, for example if the target is an Irish expatriate working for an international airline in a hub city.

But, as the Supreme Court noted in *Riley*, even a broad exception to the warrant requirement will not justify a warrantless search where the exception "would untether the rule from the justifications underlying [it]." *Riley*, 573 U.S. at 386 (alteration added).

When courts tolerate law enforcement officers who use this broad authority purely to further an existing investigation, they undermine the very goal the Exclusionary Rule seeks to achieve, which is not to redress the invasion of privacy but to prevent law enforcement from behaving badly. *See United States v. Calandra*, 414 U.S. 338, 347 (1974). Agents can circumvent entirely the limits on their authority by using their border authority not to protect the integrity of those borders but to investigate past crimes in ways the law otherwise would not tolerate. *See Vergara*, 884 F.3d at 1317 (J. Pryor, J., dissenting) ("Excepting forensic cell phone searches from the warrant requirement because those searches may produce evidence helpful in future investigations would thus 'untether the rule from [its] justifications.'" (citing *Riley v. California*, 134 S.Ct. 1473, 2485 (2014) (alteration in original)).

This is the scenario the Fourth Circuit addressed in *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019). There, law enforcement officers were investigating a man for sex trafficking and asked customs officials to stop him as he was entering the country from a trip abroad and to seize his devices. *Id.* at 717-

18. The court noted that the government should not be allowed to invoke the border search exception "'on behalf of its generalized interest in law enforcement and combatting crime.'" *Id.* at 721 (citing *United States v. Kolsuz*, 890 F.3d 133, 143 (4th Cir. 2018). To ransack a person's cell phone at the border, "the Government must have individualized suspicion of an offense that bears some nexus to the border search exception's purposes of protecting national security, collecting duties, blocking the entry of unwanted persons, or disrupting efforts to export or import contraband."[4] *Id.*

Perhaps the government will take the position that *Touset* is so broad it even allows for the search and extraction of every cell phone that passes through the border on the off-chance that those phones contain CSAM. Such position seems to be the logical extension of *Touset*. If so, it his well time for the Eleventh Circuit to sit *en banc* and revisit whether that position squares with the Fourth Amendment and *Riley*. A case like *Touset*, in the hands of brazen border patrol officers and investigative agents, leads to the predictable abuse we see in this case, where agents can circumvent the warrant requirement by waiting until the target leaves

[4] Although the court ultimately concluded that the good faith exception salvaged admissibility of the evidence, it nonetheless concluded that the search of the defendant's phones went well beyond the reasons justifying a warrantless border search. *See Aigbekaen*, 943 F.3d at 722-23, 725.

the country so they can exploit this Circuit's expansive view of border search authority.

An evidentiary hearing is needed to flesh out (1) whether Mr. Murphy voluntarily provided the password to his phone, and (2) what was known the CBP agents at the time Mr. Murphy crossed back into the United States on April 29, 2026, including what they knew about TECS alert and how and why it was created. The hearing is further necessary to uncover what if any investigative steps had been taken to address any suspicion law enforcement had that Mr. Murphy had committed a crime *before* he left the country for his work trip. The Government may argue that none of these facts are relevant given the unlimited scope of *Touset*, but Mr. Murphy seeks to challenge the breadth of *Touset*, and therefore requests that this Court offer him the chance to develop the record necessary to mount such challenge. This case presents a prime opportunity for the Eleventh Circuit to reign in *Touset* and check officers' ability to abuse the border exception.

Respectfully submitted this 25th day of August, 2026.

By:/s/ ***Lynsey M. Barron***
Lynsey M. Barron,
Ga. Bar No. 661005
Email: lynsey@barronward.com

/s/ ***J. Beth Goldstein***
J. Beth Goldstein,
Ga. Bar No. 966983
Email: beth@barronward.com

BARRON WARD, LLC
1800 Peachtree St. NE, Suite 300
Atlanta, Georgia 30309
Telephone (404) 857-2203

***Attorneys for Stephen Murphy***

**CERTIFICATE OF SERVICE**

I hereby certify that on the below date I electronically filed the foregoing Motion to Suppress Evidence Derived from Border Search with the Clerk of Court using CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 25th day of August, 2026.

/s/***J. Beth Goldstein***
By: J. Beth Goldstein
Ga. Bar No. 966983

***Attorney for Stephen Murphy***